DAUENHAUER v. SIREN ET AL.

——

(April 7, 1930. Opinion and Decree.)

——

Max M. Schaumberger, of New Orleans, and Waverly A. Henning, of Gretna, attoneys for plaintiff, appellant.

Wm. H. Talbot, of New Orleans, attorney for defendants, appellees.

BYRNES, Judge ad hoc. In this case plaintiff, Mr. Thomas B. Dauenhauer, is claiming on behalf of his thirteen year old minor daughter, Veronica, damages in the sum of $30,000 for injuries which she sustained in a deplorable accident on Mardi Gras day, Tuesday, February 21, 1928. He also seeks to recover for himself $200, the amount expended by him in providing his daughter with the necessary medical attention, nursing, etc., during the long and serious illness resulting from her injuries.

The defendants are John N. Siren, owner of the automobile, and his son, Alton Siren, who is alleged by plaintiff to have been the operator of the car at the time of the accident. The father is made a defendant on the allegation that his son was his agent.

The defense is: First, that the automobile had been stolen about 1:30 p. m. on that day, and that the driver of the car at the time of the accident was the unidentified thief. Secondly, that Alton Siren was of the full age of majority, and that no relationship of principal and agent existed between him and his father at that time.

There was judgment in the lower court in favor of the defendants, dismissing plaintiff's suit.

The immediate facts surrounding the accident are not disputed, and may be summarized as follows:

Plaintiff's daughter was standing, together with a number of other young girls of her age, on the sidewalk at the uptown lake corner of Magazine and St. Joseph streets, about 1:30 o'clock in the afternoon of Mardi Gras day, February 21, 1928, waiting for an up-bound Magazine street car. The Dodge sedan owned by John N. Siren and driven at a high rate of speed, after bouncing against two other automobiles parked on the lake side of Magazine street, near the intersection of St. Joseph street, careened wildly and dashed upon the sidewalk. The children scattered in their efforts to avoid injury, all succeeding in doing so except plaintiff's daughter and one other child. The bumper of the automobile struck his little girl with terrific force, jamming her against the building fronting on Magazine street. Her left leg was so badly crushed and broken that the surgeons at the Charity Hospital were forced to perform an emergency operation, amputating it about six inches above the knee. The other little girl who was injured suffered a fracture of the leg.

The driver of the automobile jumped to the ground and fled up Magazine street. According to plaintiff, he was Alton Siren. According to the defendants, he was the unknown youth who stole the car and has never been apprehended.

In support of his contention that Alton Siren was the driver of the car, plaintiff produces but one witness, a man named Pitre, thirty-two years of age, who, at the time of the accident, was employed as a taxicab driver. Pitre testified in substance as follows:

He was walking on the river side of Magazine street, in an uptown direction; that his attention was attracted by the bumping of cars, the grinding of brakes, and the screams of the children. That he saw the automobile as it plunged madly onto the sidewalk, striking two of the young girls; that he rushed across the street to render whatever assistance it lay in his power to give. That as he was extricating the injured girl, Veronica Dauenhauer, and attempting to make her more comfortable by placing her in a sitting position with her back resting against the wall of the building, he caught a glimpse of the driver of the machine just before he jumped from it and fled. He subsequently attempted to identify Alton Siren as this man.

Pitre's testimony is neither satisfactory nor convincing. At the time of the accident he had not known Alton Siren, in fact had never seen him before. He admits that his thoughts and actions were concentrated on rendering help to the unfortunate child, and that he was surprised and angered when he discovered that the driver of the car was running away from the scene of the accident.

About a month later Pitre, accompanied by both fathers of the injured girls and a police officer, visited the residence of Mr. John N. Siren for the purpose of identifying Alton Siren as the man whose recklessness had caused the accident. He failed to do so. Subsequently, at the trial of the case, he gave as his reason for not identifying Alton, on that occasion, that he was afraid to cause any excitement in Mr. Siren's home.

On the other hand, Alton Siren, in a straightforward manner, detailed his movements and actions on that day, from 10 o'clock in the morning until 7 in the evening. His narrative is supported by witnesses, and corroborated by proven facts.

He shows that he and his bride of a few months, together with other members of his family, were driven by his father, in his father's automobile, from his father's residence on South Pierce street to Camp and Natchez streets for the purpose of seeing the Rex parade. That they arrived on Natchez street about 11 o'clock; that his father located a favorable space on Natchez street, about forty or fifty feet from Camp, and there parked his car; that all of the members of the family left the automobile at that spot and walked over to St. Charles street where they saw the parade. That they then returned to Camp street and there waited for the parades (Rex and Druids) to pass down that street. That about 1:30 p. m., the parades having passed, his father and mother, and sister, and the little grandchildren desired to return home, while he and his wife decided to see the maskers on Canal street, attend a picture show, and have dinner downtown; that he and his wife left the family group on Camp street, near Natchez. That they walked down Camp street in the direction of Canal, and at the corner of Camp and Gravier streets he met another sister and a Mr. Rinehart; that he introduced Mr. Rinehart to his wife and spent about ten minutes in conversation with them. Leaving his sister and Mr. Rinehart, he and his wife walked to Canal street and attended a picture show at the Tudor theater, remaining there approximately two hours,

after which they had dinner at Brittlings Cafeteria, in the Masonic Temple Building; they then walked back to Canal street, took in the sights for a short while and saw another show at the Globe theater. When they left this latter place of amusement it was nearly 7 o'clock p. m.; that they walked to St. Charles street and selected a place in front of the Hanover Shoe Store on that street, and there waited to see the Comus parade. While waiting there some members of his family passing in the crowd saw him and informed him that his father's automobile had been stolen, and that it had been wrecked in an accident in which two little girls were severely injured.

The testimony of his wife and the other members of the family coincide with his in every important detail.

The father testified that after Alton and his wife left him and the family on Camp street, he, intending to return home, walked over to the place on Natchez street where the automobile had been parked that morning, but, despite a diligent search, could not find it. That he notified a police officer near-by that his Dodge sedan had been stolen. The police records show that the officer reported the theft of this car to the precinct station at 2:10 p. m. that afternoon.

An impressive fact supporting Alton Siren's statement that he was not the driver of the car is the following all-station police message which was sent out shortly after the accident.

"Arrest on sight the following described unknown white man: age, about nineteen years, weighing about 130 pounds, dark complexion, dark hair and eyes, long hair, nice looking, has a boyish voice, wore suit between color of brown and gray, no hat.

"This man is wanted for the robbery of a Dodge sedan, property of Mr. J. N. Siren, white, of 415 South Pierce Street, from Natchez near Camp Street, and after the robbery of this automobile ran into two little girls on St. Joseph and Magazine Streets, injuring them seriously, then abandoning the car on scene and escaping.

"This man can be identified by Mr. and Mrs. W. A. Chachere, Jr. (w) of 1560 Camp Street, phone Uptown 9090. When arrested notify this precinct.

"(Signed)
"Captain David B. Jackson, Commanding."

Alton Siren, the record shows, is a young man of large proportions, weighing one hundred and ninety-six pounds, a blonde, with light hair and blue eyes. It is obvious that the description of the driver as stated in the foregoing all-station police message could under no circumstances be made to fit the young defendant in this case.

Mr. and Mrs. Chachere were not called as witnesses, and there is nothing in the record to explain why the court has been deprived of the benefit of their testimony.

The plaintiff's theory of the case is difficult to follow—that Alton Siren had, without notifying his father, taken his automobile and left him, his mother, and the other members of the family, including his own wife, without a means of transportation on Carnival Day, and then, immediately after the accident, conceived the idea of pretending the car had been stolen, located his father in the dense crowds of Carnival Day and arranged for the reception and issuance of the police reports. To have accomplished these things within the short space of forty minutes we believe to be not only improbable, but impossible.

The accident was a most regrettable one —a young and beautiful girl, a trained and accomplished dancer, just past the thresh-

old of her teens, has been permanently crippled. But the evidence we believe proves with certainty that Alton Siren was not the driver of the car that caused her injuries.

The judgment of the lower court is, therefore, affirmed.